**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
GREENVILLE DIVISION**

**SIDNEY C. NELSON**                                                            **PLAINTIFF**

**V.**                                                                 **NO. 4:25-CV-111-DMB-RP**

**BRENETTA A. HOSKINS**                                                    **DEFENDANT**

**OPINION AND ORDER**

Sydney C. Nelson claims that while he was confined at the Mississippi State Penitentiary in Parchman, Mississippi, Administrative Remedy Program Team Leader Brenetta A. Hoskins violated his constitutional right to equal protection. Because Nelson failed to show cause why his complaint should not be dismissed for failure to state a claim against Hoskins, this case will be dismissed.

**I
Procedural History**

On July 14, 2025, Sidney C. Nelson, who is currently incarcerated at the East Mississippi Correctional Facility in Meridian, Mississippi, filed a pro se complaint in the United States District Court for the Northern District of Mississippi against Brenetta A. Hoskins, asserting a 42 U.S.C. § 1983 claim based on allegations that Hoskins, who he describes as "Administrative Adjudicator/ARP Team Leader," "denied him of his constitutional rights to equal protection" under the Eighth and Fourteenth Amendments when she "hinder[ed him from] exhausting his administrative remedies" as required by the Prison Litigation Reform Act.[1]  Doc. #1 at PageID 2,

---

[1] According to his complaint, "[Nelson] was housed within the Mississippi State Penitentiary/Parchman when the events gave rise to [his] claim(s)." Doc. #1 at PageID 15. Because § 1983 does not contain a specific venue provision, venue is determined using the general venue provisions of 28 U.S.C. § 1391. *See* 28 U.S.C. § 1391(a)(1) ("Except as otherwise provided by law … this section shall govern the venue of all civil actions brought in district courts of the United States."). Under § 1391, "[a] civil action may be brought in … a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred." *Id.* at § 1391(b)(2). Since Nelson alleges the events giving

3–4. The same day he filed the complaint, Nelson also filed a pro se motion to proceed in forma pauperis, which United States Magistrate Judge Roy Percy granted on August 8. Docs. #2, #7.

Ten days later, on August 18, Judge Percy ordered Nelson to show cause "why his claims should not be dismissed with prejudice." Doc. #8 at 4. Nelson filed an untimely response to the show cause order on September 12.[2] Doc. #11. On December 30, Nelson filed a pro se notice of appeal stating that he "appeal[s] to the United States Court of Appeals for the Fifth Circuit from the Final Judgment and/or Order of this Court entered in this action on the 12th day of September, 2025."[3] Doc. #13 at PageID 112. The same day, Nelson filed a pro se motion to appeal in forma pauperis, which the Court initially denied on January 6, 2026. Docs. #14, #15. Over a month later, on February 12, Nelson "respon[ded] to the Courts Order [sic] filed on 01-06-2026," and requested to "re-submit[] his show cause response." Doc. #16 at PageID 135, 136 (emphases omitted). The Court entered an amended order denying Nelson's motion to appeal in forma pauperis on March 24. Doc. #17. On May 29, the Fifth Circuit dismissed Nelson's appeal "for want of prosecution" because Nelson "failed to timely pay the filing fee." Doc. #18 at PageID 148.

## II
## Screening Standards

Because Nelson was permitted to proceed in forma pauperis in this action, his claims are subject to sua sponte dismissal under the Prison Litigation Reform Act ("PLRA").[4] 28 U.S.C. §

---

rise to his claims occurred in Parchman, Mississippi, which is located in the Northern District of Mississippi, venue is proper in this district.

[2] Nelson's show cause response is untimely because Judge Percy ordered him to respond within twenty-one days, or by September 8. Doc. #8 at 4.

[3] No final judgment or order was entered on September 12.

[4] The PLRA applies to Nelson's claims because he was incarcerated when he filed this action. S*ee Williams v. Henagan*, 595 F.3d 610, 619 (5th Cir. 2010) (per curiam) (PLRA applies when inmate is incarcerated at time suit filed, even if released from incarceration during pendency of suit).

2

1915(e)(2); *see* 28 U.S.C. § 1915A (subjecting prisoner complaint to preliminary screening regardless of in forma pauperis status). Pursuant to the PLRA, the Court is obligated to evaluate Nelson's complaint and dismiss it if it is frivolous,[5] malicious,[6] fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant who is immune from such relief." 42 U.S.C. § 1997e(c)(1).

To state a claim upon which relief can be granted, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quoting *Twombly*, 550 U.S. at 556). A legally sufficient complaint must establish more than a "sheer possibility" that the plaintiff's claim is true. *Id.* It need not contain detailed factual allegations, but it must go beyond labels, legal conclusions, or formulaic recitations of the elements of a cause of action. *Twombly*, 550 U.S. at 555. In other words, the face of the complaint must contain enough factual matter to raise a reasonable expectation that discovery will reveal evidence of each element of the plaintiff's claim. *Lormand v. US Unwired, Inc.*, 565 F.3d 228, 257 (5th Cir. 2009). If there are insufficient factual allegations to raise a right to relief above the speculative level or if it is apparent on the face of the complaint that there is an insuperable bar to relief, the claim must be dismissed. *Twombly*, 550 U.S. at 555, 561. In evaluating such, under Federal Rule of Civil Procedure 12(b)(6), a court must accept all well-pleaded facts as true and must draw all reasonable

---

[5] A claim is frivolous if it "lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989).

[6] "[A] claim qualifies as malicious if it is virtually identical to and based on the same series of events as a claim previously brought by the plaintiff." *Shakouri v. Davis*, 923 F.3d 407, 410 (5th Cir. 2019).

inferences in favor of the plaintiff. *Lormand*, 565 F.3d at 232. A court is, however, "not bound to accept as true a legal conclusion couched as a factual allegation." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).

### III
### Factual Allegations

On September 25, 2023, Sydney C. Nelson, an inmate in the custody of the Mississippi Department of Corrections ("MDOC"), filed a grievance[7] with MDOC, alleging that his personal property—namely legal documents including trial transcripts, filed motions, and more—were lost following his transfer from Unit 30-D to Unit 29-L at the Mississippi State Penitentiary ("MSP") located in Parchman, Mississippi. Doc. #1 at PageID 4, 8–9, 17. These legal documents were supposed to be packed and sent to his new unit by MSP employees but he has not seen them since the move, despite repeated requests. *Id.* at PageID 13, 17. Nelson needs these documents to aid him in pursuit of relief in state court. *Id.* at PageID 17, 18.

On October 16, 2023, Nelson was advised that his September 25 grievance would be backlogged because he had other pending grievances and "[o]nly one ARP will be processed at a time."[8] Doc. #1-10. On February 5, 2024, Nelson received a letter from Administrative Remedy Program ("ARP")[9] Team Leader Brenetta A. Hoskins, which stated that the superintendent[10] was

---

[7] A grievance is defined by MDOC as "[a] written complaint by an offender on the offender's own behalf regarding a policy applicable within an institution, a condition within an institution, an action involving an offender of an institution, or an incident occurring within an institution." Doc. #1-4 at 1.

[8] This letter refers to Nelson as "Sidney Thompson" and has the inmate number R4858, which is Nelson's inmate number. Doc. #1-10.

[9] ARP is "[a] program by which an offender may request administrative remedy for situations arising from policies, conditions, or events within the MDOC that affect them personally. Inmates [are] required to use the program for all issues before they proceed with a lawsuit." Doc. #1-4 at 1.

[10] In addition to the superintendent, the warden or community corrections director could respond to Nelson with the final decision. *Id.* at 5.

4

receiving an extension of time[11] "to prepare [a] response to [his] Administrative Remedy Request concerning receiving legal property from Unit 30." Doc. #1-9. On March 13, 2024, MDOC responded to Nelson's grievance, stating that it was advised that Nelson had received his property. Doc. #1-3 at PageID 41. Nelson replied on April 25, 2024, that he was "not satisfied with th[e] response and wish[ed] to proceed to Step Two"[12] of the grievance process because he had still not received his property. *Id.* at PageID 41–42.

On May 24, 2024, Nelson filed another grievance, asserting that his property-related ARP was being deliberately delayed. Doc. #1-8.[13] Nelson has not yet received a response to his May 24 grievance.[14] Doc. #1 at PageID 16. Nelson has filed multiple grievances, many of which have been backlogged. *Id.*

## IV
## Discussion

Judge Percy ordered Nelson to "show cause as to why his claims should not be dismissed for the following reasons: (1) his claim for deprivation of personal property is not cognizable under Section 1983 because there exists adequate state post-deprivation remedies; and (2) his dissatisfaction with the handling of his grievances fails to rise to the level of a constitutional violation because he possess no such constitutional right." Doc. #8 at 4. In his response to the

---

[11] MDOC grievance procedure dictates that "[n]o more than 90 days from the initiation to completion of the process will elapse, unless extension(s) have been granted." *Id.*

[12] According to MDOC grievance procedures, "[a]n offender who is dissatisfied with the First Step response may appeal to the ARP Director by so indicating that he is not satisfied in the appropriate space on the response form and forwarding it to the ARP Director within 5 days of receipt of the decision." *Id.*

[13] Nelson also attached to his complaint a letter from case manager Jacwanna Robinson, which states that all of Nelson's ARPs were on backlog "awaiting for a response concerning [his] complaint," and an ARP from Nelson alleging that Officer Simmons "deliberately plac[ed his] ARP (pertaining to his missing legal material) within the general population mailing bag (and not the ARP Black Box as advised)." Docs. #1-11, #1-12. These documents are not dated. *See generally* Docs. #1-11, #1-12.

[14] According to Nelson, this violates MDOC policy requiring the ARP process be completed within ninety days from initiation. Doc. #1 at PageID 9–10; Doc. #1-4 at 5.

5

show cause order, Nelson argues his claim should not be dismissed because (1) "the state[']s Post-Deprivation Remedies are inadequate due to the backlogging issue of grievances;" (2) the fact that his "grievances ha[ve] been deliberately held on file for over 2 years" is "unconstitutional and deals with the Due Process Clause of the 14th Amendment;" and (3) the Fifth Circuit has explained that "if the prison fails to respond at the last step of the grievance process … the prisoner becomes entitled to sue, because then there is no next step (save filing a lawsuit) to which the prisoner can advance."[15]  Doc. #11 at 2–3 (quoting *Wilson v. Epps*, 776 F.3d 296, 301 (5th Cir. 2015)).

### A.  Deprivation of Property

After reviewing Nelson's response to the show cause order, it is unclear whether Nelson intends to assert a separate claim for the loss of his property upon transferring units at MSP; however, to the extent he does, such a claim fails.  When an inmate's property is wrongfully taken by prison officials because of random and unauthorized acts, any claim for property deprivation is barred by the *Parratt/Hudson* doctrine.  *Hudson v. Palmer*, 468 U.S. 517, 533 (1984); *Parratt v. Taylor*, 451 U.S. 527, 541–44 (1981), *overruled in part by Daniels v. Williams*, 474 U.S. 327, 329–31 (1986).  Under this doctrine, it is well-settled that neither negligent nor intentional deprivations of property by state officials violate due process where the state provides an adequate post-deprivation remedy.  *Daniels*, 474 U.S. at 330–31; *Hudson*, 468 U.S. at 533.  It is a plaintiff's burden to establish that a state's post-deprivation remedies are inadequate.  *Myers v. Klevenhagen*, 97 F.3d 91, 94–95 (5th Cir. 1996) (per curiam).

Mississippi law provides post-deprivation remedies for both negligent and intentional seizures of property.  *See, e.g.*, Miss. Code Ann. § 11-38-1 (claim and delivery); *id.* at § 11-37-

---

[15] Given his pro se status, as well as his representation that "[he] was ready [to] mail[]" his show cause response "on 9-8-2025, but [he] had to wait four (4) days later for mailing service from the Law Librarian which may have hindered the process in answering," Doc. #16 at PageID 136 (emphasis omitted), the Court considers Nelson's response to the show cause order despite its untimeliness.

101 (replevin). The unlawful taking of an inmate's property has also been found to violate the Constitution of the State of Mississippi under certain circumstances. *See Johnson v. King*, 85 So. 3d 307 (Miss. Ct. App. 2012) (confiscation of inmate's drinking mug violated Takings Clause of state constitution). Moreover, the Fifth Circuit has held that "Mississippi's post-deprivation remedies for civil [in forma pauperis] litigants satisfy due process." *Nickens v. Melton*, 38 F.3d 183, 185 (5th Cir. 1994) (since "the post-deprivation remedies provided by the state of Mississippi are meaningful," appellant's § 1983 claim alleging that his property was taken without due process of law was barred).[16]

Nelson misidentifies the applicable state post-deprivation remedy, claiming his ARP "grievances ha[ve] been deliberately held on file for over 2 years." Doc. # 11 at 2. The remedy is not the ARP process; thus, his allegations regarding the ARP process are irrelevant to the inquiry. Rather, Nelson's remedy for the loss of personal property, if any, lies in a tort claim under Mississippi law, not a claim brought under Section 1983. Consequently, Nelson fails to state a cognizable constitutional claim for the loss of his property. *See Jones v. Bock*, 549 U.S. 199, 216 (2007) (failure to exhaust can be "a basis for dismissal for failure to state a claim."); *see also Carbe v. Lappin*, 492 F.3d 325, 328 (5th Cir. 2007) ("[A] court can dismiss a [PLRA] case … for failure to state a claim … if the complaint itself makes clear that the prisoner failed to exhaust.").

---

[16] *See Foster v. Graves*, 428 F. App'x 348, 350 (5th Cir. 2011) (per curiam) (prisoner's § 1983 claim for unrecovered property properly dismissed for failure to state a claim because (1) "under [the *Parratt/Hudson*] doctrine, deprivations of property caused by random and unauthorized misconduct of state actors … do not infringe constitutional due process provided that adequate state post-deprivation remedies exist;" (2) "Louisiana has such a remedy, the state tort remedy of conversion;" and (3) the appellant "has not shown that this remedy is inadequate."); *see also Eller v. Cole*, No. 23-50018, 2025 WL 7268221, at *1 (5th Cir. Nov. 2, 2023) ("The *Parratt/Hudson* doctrine precludes Eller from pursuing his deprivation of property claim under § 1983" because "[t]he Texas tort of conversion provides an adequate post-deprivation remedy to prisoners claiming due-process violations based on deprivations of their property.").

**B. Denial of Due Process**

While the Court understands that Nelson may be dissatisfied with MDOC's grievance procedure, any failure by Hoskins to respond to his grievances does not rise to the level of a constitutional violation. *See Hernandez v. Estelle*, 788 F.2d 1154, 1158 (5th Cir. 1986) (per curiam) (mere failure of prison official to follow prison's own regulation or policy does not amount to constitutional violation); *see also Scheidel v. Sec'y of Pub. Safety & Corr.*, 561 F. App'x 426, 427 (5th Cir. 2014) (per curiam) ("[V]iolations of prison rules do not alone rise to the level of constitutional violations and, therefore, such claims are not actionable under 1983."). Prisoners possess no constitutional right to the existence of a grievance procedure, nor do they have a due process liberty interest in having a grievance resolved to their satisfaction. *See Geiger v. Jowers*, 404 F.3d 371, 374-75 (5th Cir. 2005) (per curiam) (appellant did "not have a federally protected liberty interest in having [his] grievances resolved to his satisfaction."); *see also Guillory v. Hodge*, No. 2:14-cv-156, 2015 WL 1968636, at *1 (S.D. Miss. Apr. 30, 2015) ("The Court finds that Plaintiff's claims that Defendant Hodge failed to respond to his grievances does not rise to the level of a constitutional violation."); *Lijadu v. Immigr. & Naturalization Serv.*, No. 06-0518, 2007 WL 837285, at *3 (W.D. La. Feb. 21, 2007) ("[D]etainees 'do not have a constitutionally protected right to a grievance procedure'—much less one that complies with their own personal preferences.") (quoting *Oladipupo v. Austin*, 104 F. Supp. 2d 626, 638 (W.D. La. 2000)).

Nelson maintains that "this issue has nothing to do with MDOC resolving [his] grievance to his satisfaction—but rather MDOC not answering [his] grievances at all—which is different." Doc. # 11 at 2. Nelson, however, mischaracterizes the facts. Because he did receive a first step response for his September 25, 2023, grievance, it is not correct that MDOC completely failed to

answer his grievance.[17]  Regardless, as explained above, there is no constitutional right to a grievance procedure and an official's failure to follow procedure does not create a protectable liberty interest.  Nelson's allegations regarding his use of MDOC's grievance procedure, therefore, fail to state an actionable § 1983 claim.

**V**
**<u>Conclusion</u>**

For failure to state a claim upon which relief can be granted, this case is **DISMISSED without prejudice**.[18]  This dismissal counts as a "strike" under 28 U.S.C. § 1915(g).  Nelson is cautioned that once he accumulates three strikes, he may not proceed in forma pauperis in any civil action or appeal filed while incarcerated unless he is in imminent danger of some physical injury. 28 U.S.C. § 1915(g).

**SO ORDERED**, this 1st day of June, 2026.

**/s/Debra M. Brown**
**UNITED STATES DISTRICT JUDGE**

---

[17] In his allegations, Nelson acknowledges receipt of such a response and attached an exhibit including such response. Doc #1 at PageID 4; Doc #1-3.

[18] Though the Court's August 18 order required Nelson to show cause "why his claims should not be dismissed with prejudice," Doc. #8 at 4, the Court dismiss Nelson's complaint without prejudice because "[g]enerally a district court errs in dismissing a *pro se* complaint for failure to state a claim under Rule 12(b)(6) without giving the opportunity to amend. … Such error may be ameliorated … if the dismissal was without prejudice," *Bazrowx v. Scott*, 136 F.3d 1053, 1054 (5th Cir. 1998) (emphasis in original); *see Hitt v. City of Pasadena*, 561 F.2d 606, 608 (5th Cir. 1977) ("[T]he dismissal of a case with prejudice is a drastic remedy to be used only in those cases where a lesser sanction would not better serve the interests of justice.") (quoting *Brown v. Thompson*, 430 F.2d 1214, 1216 (5th Cir. 1970)).